STATE OF NORTH CAROLINA v. MARION URIAH HODGES, JR.

No. 5

(Filed 28 November 1978)

1. **Homicide § 19.1— reputation of deceased—exclusion of evidence—harmless error**

    While the trial judge in a homicide case erred in sustaining the State's objections to questions to defendant which sought to elicit evidence that defendant shot deceased because he knew of deceased's reputation as a dangerous man and was afraid of him, defendant was not prejudiced by such error where defendant had the benefit of this evidence because the trial judge did not sustain the State's objection until defendant had answered the questions in the presence of the jury and there was no motion to strike or instruction to the jury to disregard defendant's answers; similar testimony was admitted without objection; and the rulings of the trial judge in no way indicated an opinion as to defendant's guilt or innocence or as to the weight and credibility of the evidence offered.

2. **Homicide § 21.7— second degree murder—sufficiency of evidence**

    The State's evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of second degree murder where it tended to show

that defendant intentionally inflicted a wound with a deadly weapon which caused deceased's death.

**3. Criminal Law § 162.6— evidence competent in part—general objection**

The trial court did not err in overruling defendant's general objection to a witness's testimony concerning a telephone conversation with defendant where all of the testimony to which defendant objected was not inadmissible since a substantial portion of it had been previously admitted without objection, and defendant failed to specify the portion of the evidence which was objectionable.

**4. Homicide § 19.1— State's rebuttal of evidence of deceased's character for violence—waiver of objection**

The trial court in a homicide prosecution did not err in instructing the jury that the State could rebut defendant's evidence of deceased's character for violence by evidence of the good character of deceased for peace and quiet, and defendant will not be granted a new trial because the State presented evidence of deceased's good character and evidence that he was neither a dangerous nor violent man where defendant failed to object at the time the evidence was offered.

**5. Criminal Law §§ 74.1, 75— confession—instructions—surrounding circumstances—consideration as whole**

The trial court did not err in instructing the jury that, if it found defendant made a pretrial statement to an officer, it should consider the circumstances under which it was made in determining whether it was truthful and the weight to be given it, or in failing to instruct the jury that the whole of a confession must be taken together, considering those portions favorable as well as those portions against the defendant.

Justice BRITT took no part in the consideration or decision of this case.

APPEAL by defendant pursuant to G.S. 7A-30(2) from the decision of the Court of Appeals, reported in 35 N.C. App. 328, 241 S.E. 2d 365, finding no error in the trial before *Small, J.*, at the 27 June 1977 Criminal Session of MARTIN County Superior Court.

Defendant was charged in a bill of indictment with the first degree murder of Kenneth Harris. The State elected to seek no greater verdict than second degree murder. Defendant entered a plea of not guilty.

We summarize the evidence presented at trial.

On the morning of 22 November 1976, defendant and four other men were deer hunting on a rural dirt road in Martin County. Shortly before noon, defendant was sitting in his truck which was parked on the left side of the road. One of his hunting

companions was in the truck with him and the others were standing nearby. The deceased, Kenneth Harris, drove up and parked his truck in the middle of the road near the front of defendant's truck. Harris left his truck and, without speaking to anyone, went directly to the driver's side of defendant's truck. The driver's door was closed, but the window was open. Defendant called Harris "pretty boy," and Harris called defendant an "ugly s.o.b." Harris reached through the window and grabbed defendant's shoulders and throat. A scuffle ensued during which the truck door was opened, and defendant was pulled from the truck. As he was being pulled from the truck, defendant seized a .22 Derringer pistol from the seat of the truck. He fell or was thrown to the ground, and upon hitting the ground, he fired a shot which struck Harris. Defendant asked his companions to call the rescue squad and then proceeded to the sheriff's department where he gave a statement admitting that he had shot Harris with the .22 caliber Derringer.

It was stipulated that the deceased died as a result of a gunshot wound inflicted by defendant.

Deceased's wife testified that sometime during the month before the shooting, defendant called their home and, upon being told that deceased could not come to the phone, told Mrs. Harris to tell deceased that he would hunt on land deceased was farming anytime he pleased, and, furthermore, he had something for deceased. Defendant admitted making the telephone call but testified that he called only to inquire of deceased if it would be all right for him to hunt in the area and that Mrs. Harris told him to "go to hell" and hung up.

Defendant testified that he was aware of Harris's reputation as a dangerous man, and he shot Harris because he knew he would be hurt if he did not stop him. On cross-examination, defendant stated that he had had no previous trouble with Harris although Harris had told him to keep his dogs out of his fields. He admitted that Harris's actions made him mad and that he shot him in the chest. Defendant further explained that he kept the pistol in his truck because he often carried money between his home and his store.

Two of defendant's hunting companions testified to hearing complaints and threats passed between Harris and defendant

several weeks prior to the shooting. Five witnesses testified that Harris had a bad reputation in the community for being a dangerous and violent man. Six witnesses testified as to defendant's general good character and reputation in the community.

The State presented evidence on rebuttal tending to show that Harris's general character and reputation in the community was good and that he was neither a dangerous nor violent man. There was also evidence that Harris at the time of his death was 39 years of age, was approximately six feet tall and weighed about 200 pounds, and that defendant was 42 years of age, was five feet eight inches tall and weighed 195 pounds.

The court instructed the jury that they could return a verdict of guilty of second degree murder, guilty of manslaughter or not guilty. The jury returned a verdict of guilty of manslaughter, and defendant was sentenced to a prison term of eighteen years. He appealed to the Court of Appeals which found no error. Judge Webb dissented.

*Rufus L. Edmisten, Attorney General, by Kaye R. Webb, Associate Attorney, for the State.*

*W. B. Carter and Clarence W. Griffin, attorneys for defendant appellant.*

BRANCH, Justice.

[1] We first consider whether the Court of Appeals correctly decided that there was no error in the rulings of the trial judge which sustained objections to questions relating to defendant's acts of self defense.

In this connection, the record discloses the following:

Q. Mr. Hodges, why did you shoot Mr. Harris?

A. Well, I was afraid of him and I knew he was going to hurt me.

Objection of the District Attorney sustained.

Q. Can you tell us why you shot Mr. Harris?

A. I knew he was going to hurt me.

Objection of District Attorney sustained.

I was afraid of him because I knowed he had a bad reputation. He had a reputation for being dangerous . . .

Q. I ask you, Mr. Hodges, why you were afraid of him.

Objection by the District Attorney sustained.

The witness was permitted to make the following answer to the court reporter in the absence of the jury: "because he had a dangerous reputation. He assaulted his brother, was charged with assaulting his brother and two or three more in the neighborhood."

Defendant contends that these rulings precluded a showing that he killed his adversary under circumstances which caused defendant to reasonably believe that it was necessary to shoot in order to save himself from death or great bodily harm in the lawful exercise of his right of self-defense.

We are of the opinion that the trial judge erred by sustaining the objections to the questions which sought to present evidence that defendant acted because of a reasonable apprehension of death or great bodily harm when he shot and killed Kenneth Harris. *See, State v. Champion,* 222 N.C. 160, 22 S.E. 2d 232. However, we agree with the conclusion of the majority of the Court of Appeals that the rulings of the trial judge did not result in prejudicial error to defendant.

In *State v. Edmondson,* 283 N.C. 533, 196 S.E. 2d 505, under virtually identical circumstances, this Court answered the question posed by this assignment of error adversely to the defendant. There, Justice Lake, speaking for the Court, stated:

The third assignment of error is to the court's sustaining objections to the defendant's testimony as to whether Jones overheard the defendant's statement by telephone to Scott as to the reason why the defendant did not like to ride around with Jones. It appears from the record that the solicitor's objections were sustained after the witness had answered in the presence of the jury and the jury was not instructed to disregard the testimony. Thus, as a practical matter, the defendant had the benefit of the evidence. Furthermore, without objection, the defendant subsequently

testified that when he and his companions arrived at the scene of the shooting, in response to an inquiry by the deceased, the defendant stated to the deceased exactly the same reason for not wanting to ride around with him. This cured any error which there may have been in the ruling of the court now assigned as error. "The exclusion of testimony cannot be held prejudicial when the same witness is thereafter allowed to testify to the same import, or the evidence is thereafter admitted, or the party offering the evidence has the full benefit of the fact sought to be established thereby by other evidence." Strong, N.C. Index 2d, Appeal and Error, § 49, and numerous cases there cited.

Here the record indicates that, with one exception, the trial judge did not sustain the State's objections until defendant had answered the questions in the presence of the jury. Thus, as a practical matter defendant had the benefit of this evidence, and there was no motion to strike or instruction to the jury to disregard defendant's answers. The answers which the jury heard and the one response that was placed in the record in the jury's absence all tended to show that deceased had a reputation of being a dangerous man and that defendant was aware of that reputation. Moreover, similar testimony was admitted without objection. Finally, we note that the rulings of the trial judge in no way indicated an opinion as to the defendant's guilt or innocence or as to the weight and credibility of the evidence offered. Under the particular circumstances of this case, we hold that the Court of Appeals correctly decided that these rulings by the trial judge did not result in prejudicial error. The facts in instant case, as in *Edmondson*, do not present the question of whether the trial judge's erroneous rulings would have been prejudicial absent the admission of evidence of like import without objection. We reserve decision on this question until presented by a proper case.

[2]  Defendant assigns as error the failure of the trial judge to grant his motion for judgment of nonsuit as to the charge of murder in the second degree.

Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Davis*, 289 N.C. 500, 223 S.E. 2d 296, *death sentence*

*vacated,* 429 U.S. 809; *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393.

In instant case, all the evidence tends to show that defendant intentionally inflicted a wound with a deadly weapon which caused deceased's death. Such evidence raises inferences of an unlawful killing with malice which are sufficient to permit, but not require, the jury to return a verdict of murder in the second degree. *State v. Jackson,* 284 N.C. 383, 200 S.E. 2d 596; *State v. Rummage,* 280 N.C. 51, 185 S.E. 2d 221. Defendant's evidence of self defense or that he killed in a heat of passion upon sudden provocation are matters of excuse and mitigation which should be weighed against the raised inferences of unlawfulness and malice. *State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575, *rev'd on other grounds,* 432 U.S. 233.

We hold that there was ample evidence to permit the jury to draw reasonable inferences that defendant unlawfully and with malice killed Kenneth Harris on 22 November 1976.

[3] Defendant argues that the Court of Appeals erred in finding no error in the trial judge's ruling which admitted, over objection, the testimony of Mrs. Kenneth Harris concerning a telephone conversation with defendant.

This record indicates that the witness had previously testified at some length, without objection, concerning this telephone conversation. When she was later recalled, she, in substance, repeated the same testimony and added that she told defendant that she considered his statement a threat. She also expanded her original testimony by stating that she had engaged in prior telephone conversations with defendant during which she recognized his voice. It was at this point that defendant finally lodged a general objection.

Clearly, all of the testimony to which defendant objected was not inadmissible since a substantial portion of it had been previously admitted without objection. Defendant failed to specify the portion of the testimony to which he directed his objection.

In *State v. Ledford,* 133 N.C. 714, 45 S.E. 944, this Court considered a question similar to the one presented by this assignment of error and stated:

The objections are general, and the rule is well settled that such objections will not be entertained if the evidence consists of several distinct parts, some of which are competent and others not. In such a case the objector must specify the ground of the objection, and it must be confined to the incompetent evidence. Unless this is done he cannot afterwards single out and assign as error the admission of that part of the testimony which was incompetent.

See also, Wilson v. Williams, 215 N.C. 407, 2 S.E. 2d 19; Nance v. Telegraph Co., 177 N.C. 313, 98 S.E. 838.

In instant case, defendant's objection to the testimony of this witness is to portions of the evidence en masse. He failed to point out the portion of the evidence which was objectionable. Defendant's failure to so do waived his right to assign as error the portion of the testimony which he contended was incompetent.

[4] Defendant assigns as error the trial court's instruction to the jury as to the State's right to rebut evidence of deceased's character for violence. The State presented evidence of deceased's good character and evidence that he was neither a dangerous nor violent man. Defendant did not object to the introduction of any of this evidence. Judge Small instructed the jury that, "The State may rebut the defendant's evidence of deceased's character for violence by evidence of the good character of Kenneth Harris for peace and quiet." The instruction correctly stated the law. State v. Johnson, 270 N.C. 215, 154 S.E. 2d 48; State v. Champion, supra. Defendant contends, however, that this instruction was improper as the State introduced no evidence of Kenneth Harris's reputation for peace and quiet. Although some support may be found in Johnson and Champion for defendant's contention, we think that defendant's reliance upon these cases is misplaced. In Johnson and Champion, the defendant timely objected to the questioned evidence. Here defendant failed to object.

It is well established that, nothing else appearing, the admission of incompetent evidence is not ground for a new trial where there was no objection at the time the evidence was offered. State v. Jones, 280 N.C. 322, 185 S.E. 2d 858; State v. Lowery, 286 N.C. 698, 213 S.E. 2d 255, modified 428 U.S. 902, and cases cited therein.

This assignment of error is overruled.

[5]   Defendant assigns as error the trial court's instruction as to the law and as to the weight to be given to a statement defendant made to a deputy sheriff prior to trial. The jury was instructed that, "If you find the defendant made the statement, then you should consider all the circumstances under which it was made in determining whether it was a truthful statement, and the weight that you will give to it." Defendant contends that the trial judge should have given the instruction set out in *State v. Edwards*, 211 N.C. 555, 191 S.E. 1, to the effect that the whole of a confession must be taken together, considering those portions favorable to as well as those portions against the defendant. *Edwards* differs from this case in that in *Edwards* the trial judge instructed the jury to take the defendant's exculpatory statements "with a grain of salt." The *Edwards* instruction was not warranted in the instant case because here the trial judge did not instruct the jury to weigh the statement in favor of either party.

We find no error in the instructions given. Moreover, the record shows no exception 14 which was the basis for the assignment of error concerning the weight to be given the statement. Such assignment of error is, therefore, not to be considered on appeal. Rule 10, Rules of Appellate Procedure.

We have carefully examined the remaining assignments of error and this entire record. Our examination discloses nothing which would warrant disturbing the verdict of the jury or the judgment entered thereon.

Affirmed.

Justice BRITT took no part in the consideration or decision of this case.